IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| NATHANIEL HIERS | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | |
| | § | No. 4:20-cv-00321-SDJ |
| The Board of Regents of the University | § | |
| of North Texas System—CHAIR | § | |
| LAURA WRIGHT, et al. | § | |
| | § | |
| *Defendants.* | § | |

---

## DEFENDANTS' MOTION TO DISMISS

---

KEN PAXTON
Attorney General of Texas

JEFFREY C. MATEER
First Assistant Attorney General

RYAN L. BANGERT
Deputy First Assistant Attorney
General

DARREN L. MCCARTY
Deputy Attorney General for Civil
Litigation

THOMAS A. ALBRIGHT
Chief, General Litigation Division

TODD A. DICKERSON
Attorney-in-Charge
Assistant Attorney General
Texas Bar No. 24118368
General Litigation Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
(512) 463-2120 | FAX: (512) 320-0667
Todd.Dickerson@oag.texas.gov

COUNSEL FOR DEFENDANTS

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................ 1

STATEMENT OF THE ISSUES ........................................................................ 3

BACKGROUND ................................................................................................. 4

    I.    Hiers Anonymously and Privately Teases Another
        Anonymous Person's Fliers About Microaggressions in the
        Workplace. ............................................................................................. 4

    II.   There was No Binding Contract to have Hiers Teach
        During the Spring 2020 Semester. ........................................................ 7

    III.  Overview of the Complaint. ................................................................... 9

LEGAL STANDARD .......................................................................................... 9

ARGUMENT .................................................................................................... 10

    I.    Hiers' First Amendment Claims Should be Dismissed. ..................... 10

        A.   Hiers' First Amendment Claims are All Governed
            by the *Pickering* Test. .................................................................. 11

        B.   Hiers' First Amendment Claims Fail Because a
            Public Employee's Anonymous, Uninformative, and
            Private Teasing of Another Anonymous Individual
            is Not Speech on a Matter of Public Concern. ............................ 14

        C.   Additional Reasons for Why Hiers' First
            Amendment Claims Should be Dismissed. ................................. 22

    II.   Hiers' Fourteenth Amendment Claims Should be
        Dismissed. ........................................................................................... 25

        A.   Hiers' Vagueness Challenge to the Misconduct
            Policy Fails—He was Never Injured by the
            Misconduct Policy and the Policy Reasonably
            Explains what Acts are Considered "Misconduct." .................... 25

        B.   Hiers' Procedural Due Process Claim Fails
            Because: (1) There was No Binding Agreement to
            have Him Teach for the Spring 2020 Semester; (2)
            He was an At Will Employee; and (3) He Received
            All Constitutionally-Required Process. ...................................... 26

            1.    General Overview. ........................................................... 26

i

2.　　There was No Binding Contract to have
Hiers Teach for the Spring 2020 Semester........................ 27

3.　　At Most, Hiers was an At Will Employee. ....................... 29

4.　　Hiers Received all Constitutionally-Required
Process......................................................................... 30

C.　　Hiers' Equal Protection Claim is Barred by
Supreme Court Precedent. ............................................. 31

III.　　Hiers' Individual-Capacity Claims Fail Because He did
Not Plausibly Allege "Personal Involvement" for 13 of the
15 Defendants.......................................................................... 32

IV.　　Hiers Cannot Sue Defendants in Their Individual
Capacities for the Alleged Breach of Contract with UNT. ................... 33

V.　　Hiers' § 1983 Official-Capacity Claims for Damages and
His Breach of Contract Claim are Barred by Sovereign
Immunity. ................................................................................ 35

VI.　　Hiers' Individual-Capacity Claims are Barred by
Qualified Immunity................................................................... 35

A.　　Legal Standard. ........................................................... 35

B.　　Defendants are Entitled to Qualified Immunity
Because Not Every Reasonable Official Would have
Understood that Their Actions Violated Clearly
Established Law. .......................................................... 36

CONCLUSION........................................................................... 39

CERTIFICATE OF SERVICE .................................................... 40

## TABLE OF AUTHORITIES

**Cases**

*Aguilar v. Texas Dep't of Criminal Justice,*
   160 F.3d 1052 (5th Cir. 1998) ............................................................ 35

*Alexander v. Eeds,*
   392 F.3d 138 (5th Cir. 2004) ............................................................. 15

*Arnett v. Kennedy,*
   416 U.S. 134 (1974) ......................................................................... 24

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009) ......................................................................... 10

*Ballantyne v. Champion Builders, Inc.,*
   144 S.W.3d 417 (Tex. 2004)............................................................... 34

*Barrera-Montenegro v. U.S. & Drug Enf't Admin.,*
   74 F.3d 657 (5th Cir. 1996) ............................................................... 10

*Batterton v. Tex. Gen. Land Office,*
   783 F.2d 1220 (5th Cir. 1986) ........................................................... 27

*Bd. of Regents of State Colleges v. Roth,*
   408 U.S. 564 (1972) ......................................................................... 26

*Bell Atl. Corp. v. Twombly,*
   550 U.S. 544 (2007) ......................................................................... 10

*Benes v. Puckett,*
   602 F. App'x 589 (5th Cir. 2015) ....................................................... 38

*Block v. Texas Bd. of Law Examiners,*
   952 F.3d 613 (5th Cir. 2020) ............................................................. 10

*Broadrick v. Oklahoma,*
   413 U.S. 601 (1973) ......................................................................... 24

*Brokaw v. Mercer Cty.,*
   235 F.3d 1000 (7th Cir. 2000) ........................................................... 37

*Brooks v. Arthur,*
    685 F.3d 367 (4th Cir. 2012) ................................................................ 22

*Brooks v. Denver Pub. Sch.,*
    2017 WL 5495793 (D. Colo. Nov. 16, 2017) ........................................ 19

*Broussard v. Jefferson Cty.,*
    2016 WL 11190107 (E.D. Tex. Apr. 20, 2016) ..................................... 13

*Brown v. Callahan,*
    623 F.3d 249 (5th Cir. 2010) ................................................................ 36

*Buchanan v. Alexander,*
    919 F.3d 847 (5th Cir. 2019) ................................................................ 16

*Byars v. City of Austin,*
    910 S.W.2d 520 (Tex. App. 1995) .................................................. 27, 30

*Campos v. Alamo Cmty. Coll. Dist.,*
    2005 WL 2402674 (W.D. Tex. Sept. 23, 2005) ................................... 27

*City of Houston v. Williams,*
    353 S.W.3d 128 (Tex. 2011) ................................................................. 28

*Cleveland v. Liberty Cty. Sheriff's Dep't,*
    626 F. App'x 540 (5th Cir. 2015) ........................................................ 37

*Collins v. Morgan Stanley Dean Witter,*
    224 F.3d 496 (5th Cir. 2000) ................................................................ 10

*Connick v. Myers,*
    461 U.S. 138 (1983) ...................................................................... passim

*Cooper v. City of Woodville,*
    2007 WL 781435 (E.D. Tex. Mar. 12, 2007) ....................................... 33

*Dallas/Fort Worth Int'l Airport Bd. v. Vizant Techs., LLC,*
    576 S.W.3d 362 (Tex. 2019) ................................................................. 28

*Danos v. Jones,*
    652 F.3d 577 (5th Cir. 2011) ................................................................ 35

*Davis v. Williams,*
    617 F.2d 1100 (5th Cir. 1980) ............................................................. 26

*Delahoussaye v. City of New Iberia,*
  937 F.2d 144 (5th Cir. 1991) ................................................................ 31

*Dep't of Soc. Servs. of City of New York,*
  436 U.S. 658 (1978) ............................................................................. 33

*Desrochers v. City of San Bernardino,*
  572 F.3d 703 (9th Cir. 2009) ............................................................... 21

*Dodds v. Childers,*
  933 F.2d 271 (5th Cir. 1991) ............................................................... 21

*Dorsett v. Bd. of Trustees for State Colleges & Universities,*
  940 F.2d 121 (5th Cir. 1991) ........................................................ 15, 17

*Dorsey v. Portfolio Equities, Inc.,*
  540 F.3d 333 (5th Cir. 2008) ............................................................... 10

*Duke v. N. Texas State Univ.,*
  469 F.2d 829 (5th Cir. 1972) ........................................................ 17, 38

*Engquist v. Oregon Dept. of Agr.,*
  553 U.S. 591 (2008) ............................................................................. 32

*Escobar-Molano v. Univ. of N. Texas,*
  2005 WL 8161012 (E.D. Tex. Oct. 27, 2005).......................................... 35

*Esfeller v. O'Keefe,*
  391 F. App'x 337 (5th Cir. 2010) ......................................................... 25

*Fairchild v. Liberty Indep. Sch. Dist.,*
  2008 WL 11446526 (E.D. Tex. Feb. 11, 2008) ...................................... 14

*Finch v. Fort Bend Indep. Sch. Dist.,*
  333 F.3d 555 (5th Cir. 2003) ............................................................... 15

*Flores v. City of Palacios,*
  381 F.3d 391 (5th Cir. 2004) ............................................................... 36

*Galloway v. Louisiana,*
  817 F.2d 1154 (5th Cir. 1987) ............................................................. 31

*Garcetti v. Ceballos,*
  547 U.S. 410 (2006) ................................................................. 12, 13, 38

*Garrett v. Mathews*,
    474 F. Supp. 594 (N.D. Ala. 1979) .......................................................... 24

*General Servs. Comm'n v. Little-Tex Insulation Co.*,
    39 S.W.3d 591 (Tex. 2001).......................................................................... 35

*Graziosi v. City of Greenville Miss.*,
    775 F.3d 731 (5th Cir. 2015) ............................................................... 15, 16

*Gunaca v. State of Tex.*,
    65 F.3d 467 (5th Cir. 1995) ...................................................................... 38

*Gwinnett v. Sw. Fla. Reg'l Planning Council*,
    407 F. Supp. 3d 1273 (M.D. Fla. 2019) ................................................... 14

*Hardesty v. Cochran*,
    621 F. App'x 771 (5th Cir. 2015) .............................................................. 13

*Harlow v. Fitzgerald*,
    457 U.S. 800 (1982) .................................................................................. 36

*Harris v. Noxubee Cty., Mississippi*,
    350 F. Supp. 3d 592 (S.D. Miss. 2018) .................................................... 13

*Hawkins v. D.C.*,
    923 F. Supp. 2d 128 (D.D.C. 2013).......................................................... 14

*Haynes v. City of Beaumont*,
    35 S.W.3d 166 (Tex. App. 2000) .............................................................. 30

*Heggemeier v. Caldwell Cty., Texas*,
    826 F.3d 861 (5th Cir. 2016) ............................................................. 27, 30

*Hodorowski v. Ray*,
    844 F.2d 1210 (5th Cir. 1988) ................................................................. 37

*Houston Balloons & Promotions, LLC v. City of Houston*,
    589 F. Supp. 2d 834 (S.D. Tex. 2008)...................................................... 24

*Hunter v. Bryant*,
    502 U.S. 224 (1991) .................................................................................. 36

*In re Prewitt*,
    280 F. Supp. 2d 548 (N.D. Miss. 2008) ................................................... 25

*Integrity Collision Ctr. v. City of Fulshear*,
   837 F.3d 581 (5th Cir. 2016) ................................................................ 32

*James v. Mellen*,
   305 F. App'x 192 (5th Cir. 2008) ......................................................... 38

*Jordan v. Pugh*,
   425 F.3d 820 (10th Cir. 2005) .............................................................. 26

*Keenan v. Tejeda*,
   290 F.3d 252 (5th Cir. 2002) ................................................................ 38

*Kinney v. Weaver*,
   367 F.3d 337 (5th Cir. 2004) ......................................................... 14, 38

*Kluge v. Brownsburg Cmty. Sch. Corp.*,
   432 F. Supp. 3d 823 (S.D. Ind. 2020) .................................................. 14

*Kolender v. Lawson*,
   461 U.S. 352 (1983) ............................................................................. 26

*Kovacic v. Villarreal*,
   628 F.3d 209 (5th Cir. 2010) ................................................................ 36

*Levitt v. Univ. of Texas at El Paso*,
   759 F.2d 1224 (5th Cir. 1985) .............................................................. 30

*Malley v. Briggs*,
   475 U.S. 335 (1986) ............................................................................. 36

*Marinello v. Bushby*, No. CIV. A.1:95CV167-D-D,
   1996 WL 671410 (N.D. Miss. Nov. 1, 1996) ....................................... 22

*Martin v. Credit Prot. Ass'n Inc.*,
   793 S.W.2d 667 (Tex. 1990) ................................................................. 28

*Martin v. Parish*,
   805 F.2d 583 (5th Cir. 1986) ......................................................... 16, 17

*MD Physicians & Assoc., Inc. v. State Bd. of Ins.*,
   957 F.2d 178 (5th Cir. 1992) ................................................................ 10

*Meriwether v. Trustees of Shawnee State Univ.*,
   2019 WL 4222598 (S.D. Ohio Sept. 5, 2019) .................................. 18, 25

*Montgomery Cty. Hosp. Dist. v. Brown*,
  965 S.W.2d 501 (Tex. 1998) ................................................................. 27

*Moore v. Bryant*,
  853 F.3d 245 (5th Cir. 2017) ............................................................... 10

*Moreau v. St. Landry Par. Fire Dist. No. 3*,
  808 F. App'x 225 (5th Cir. 2020) ......................................................... 14

*Morgan v. Swanson*,
  659 F.3d 359 (5th Cir. 2011) ......................................................... 36, 38

*Morgan v. Swanson*,
  755 F.3d 757 (5th Cir. 2014) ............................................................... 38

*Morrison v. Bd. of Educ. of Boyd Cty.*,
  521 F.3d 602 (6th Cir. 2008) ............................................................... 24

*Muncy v. City of Dall.*,
  335 F.3d 394 (5th Cir. 2003) ............................................................... 27

*Muslow v. Bd. of Supervisors of Louisiana State Univ. & Agric. & Mech. Coll.*,
  2020 WL 1864876 (E.D. La. Apr. 14, 2020) ........................................ 13

*NiGen Biotech, L.L.C. v. Paxton*,
  804 F.3d 389 (5th Cir. 2015) ............................................................... 35

*Norris v. Housing Authority of City of Galveston*,
  980 F. Supp. 885 (S.D. Tex. 1997) ....................................................... 34

*Noyola v. Texas Dept. of Human Resources*,
  846 F.2d 1021 (5th Cir. 1988) ............................................................. 37

*Pickering v. Bd. of Ed. Of Twp. High Sch. Dist. 205, Will Cty., Illinois*,
  391 U.S. 563 (1968) ...................................................................... 11, 18

*Prairie View A&M Univ. v. Dickens*,
  243 S.W.3d 732 (Tex. App. 2007) ........................................................ 35

*Prof'l Res. Plus v. Univ. of Texas, Austin*,
  2011 WL 749352 (Tex. App. Mar. 4, 2011) .......................................... 35

*Rosario v. Texas Veterans Comm'n*,
  2019 WL 5595234 (W.D. Tex. Oct. 29, 2019) ....................................... 35

*Roth v. United States,*
    354 U.S. 476 (1957) ................................................................................ 12

*Rumsfeld v. Forum for Acad. & Institutional Rights, Inc.,*
    547 U.S. 47 (2006) ................................................................................. 22

*San Diego v. Roe,*
    543 U.S. 77 (2004) ................................................................................. 18

*Serv. Employees Int'l Union, Local 5 v. City of Houston,*
    595 F.3d 588 (5th Cir. 2010) ................................................................ 24

*Shatkin v. Univ. of Texas at Arlington,*
    2009 WL 614788 (N.D. Tex. Mar. 10, 2009) ........................................ 18

*Shepherd v. McGee,*
    986 F. Supp. 2d 1211 (D. Or. 2013)................................................ 19, 20

*Sims v. City of Madisonville,*
    894 F.3d 632 (5th Cir. 2018) ................................................................ 26

*Spuler v. Pickar,*
    958 F.2d 103 (5th Cir. 1992) ................................................................ 26

*Staheli v. Univ. of Miss.,*
    854 F.2d 121 (5th Cir. 1988) .......................................................... 27, 29

*Surtain v. Stanley,*
    2015 WL 10012999 (E.D. Tex. Dec. 16, 2015) .................................... 33

*Swank v. Smart,*
    898 F.2d 1247 (7th Cir. 1990) .............................................................. 17

*Teague v. City of Flower Mound, Tex.,*
    179 F.3d 377 (5th Cir. 1999) ................................................................ 14

*Texas Dep't of Pub. Safety v. Bonilla,*
    481 S.W.3d 640 (Tex. 2015)................................................................. 34

*Thayer v. City of Holton*
    515 F. Supp. 2d 1198 (D. Kan. 2007) .................................................. 19

*Thompson v. Steele,*
    709 F.2d 381 (5th Cir. 1983) .................................................................... 32

*U.S. Tech. Corp. v. Mississippi Dep't of Envtl. Quality,*
    2016 WL 4098609 (S.D. Miss. July 28, 2016) ......................................... 33

*United States ex rel. Jackson v. Univ. of N. Texas,*
    2015 WL 13743553 (E.D. Tex. Dec. 4, 2015) ......................................... 35

*United States v. Arnold,*
    740 F.3d 1032 (5th Cir. 2014) ................................................................ 22

*United States v. Nat'l Treasury Employees Union,*
    513 U.S. 454 (1995) ................................................................................ 14

*United States v. Streett,*
    434 F. Supp. 3d 1125 (D.N.M. 2020) ..................................................... 14

*United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers
    Int'l Union v. Anderson,*
    2018 WL 3017366 (W.D. Tex. June 15, 2018) ....................................... 13

*Vill. of Willowbrook v. Olech,*
    528 U.S. 562 (2000) ................................................................................ 31

*Vojvodich v. Lopez,*
    48 F.3d 879 (5th Cir. 1995) .................................................................... 14

*Wigginton v. Jones,*
    2020 WL 3567060 (5th Cir. July 1, 2020) ............................ 26, 27, 29, 30

*Wilcox v. Cty. of Cibola,*
    2007 WL 9709892 (D.N.M. Dec. 17, 2007) ............................................ 23

*Wilkins v. Daniels,*
    744 F.3d 409 (6th Cir. 2014) .................................................................. 22

*Will v. Michigan Dep't of State Police,*
    491 U.S. 58 (1989) .................................................................................. 35

*Williams v. Alabama State Univ.,*
    102 F.3d 1179 (11th Cir. 1997) .............................................................. 20

*Withiam v. Baptist Health Care of Oklahoma, Inc.*,
    98 F.3d 581 (10th Cir. 1996) .............................................................................. 20, 21

## Statutes

42 U.S.C. § 1983 ................................................................................... 3, 4, 33, 35

## Rules

Fed. R. Civ. P. 12(b)(1) ............................................................................. 10
Fed. R. Civ. P. 12(b)(6) ................................................................................. 9

## Other Authorities

Restatement (Second) of Agency § 320 (1958) ....................................... 44
Restatement (Second) of Contracts § 24 (1981) ................................... 37

## INTRODUCTION

This case was started by a six-word joke Plaintiff Nathaniel Hiers anonymously scribbled on a University of North Texas ("UNT") faculty lounge chalkboard.

Hiers was a non-tenured adjunct professor who taught a few UNT math classes during the Fall 2019 semester, making $3,600 per class. On November 25, 2019, Hiers was hanging around UNT's math department faculty lounge. He saw a stack of fliers an anonymous person left in the lounge that discussed the potential harmfulness of microaggressions in the workplace. These fliers apparently annoyed Hiers who, based on his Complaint, holds some well-developed ideas about why the concept of microaggressions "actually hurts diversity and tolerance."[1] Yet he did not express these substantive ideas on the day in question. Instead, Hiers anonymously scrawled the following to "jokingly tease[]" whoever left the fliers:[2]



---

[1] Complaint ("Compl."), ¶ 106.
[2] *Id.* at ¶ 125; ECF 1-10.

1

The following day, Hiers identified himself as the message's author in response to a question by Dr. Ralf Schmidt, the Chair of UNT's Department of Mathematics. Hiers claims that, due to his comment, UNT decided not to reappoint him to teach another few math classes for the Spring 2020 semester. Hiers brings nine claims (five freedom of speech claims, three due process claims, and one breach of contract claim) against 15 high-ranking UNT and UNT System officials due to his six-word joke.

Hiers' First Amendment claims fail. Supreme Court cases like *Pickering*, *Connick*, and *Garcetti* establish the general standard (the "*Pickering* test") that governs a public employee's speech in the workplace. Under the *Pickering* test, speech is only protected if it is on a matter of "public concern." Hiers is asking this Court to be the first in the nation to find that a public employee's anonymous, uninformative, and private teasing of another anonymous individual is speech on a matter of public concern. The weight of authority suggests otherwise. And the unprecedented nature of Hiers' request raises obvious qualified immunity issues.

Hiers' remaining claims are also meritless. Hiers was an at-will non-tenured faculty member for UNT who had no protectable interest in continued employment with the University, which is fatal to his procedural due process claim. Hiers' as-applied vagueness claim and his equal protection class-of-one claim are both barred by Supreme Court precedent. Hiers' breach of contract claim is barred by sovereign immunity and is otherwise meritless as he cannot enforce the alleged UNT contract against Defendants in their individual capacities.

In sum, Hiers' claims are inadequately pled and barred by sovereign and qualified immunity. His action should be dismissed in its entirety.

## STATEMENT OF THE ISSUES

1. **First Amendment (*Pickering* Applicability):** The Supreme Court emphasizes that public employers must be given wide latitude to manage their offices, largely for federalism and separation of powers reasons. The *Pickering* test reflects the Supreme Court's balance of public employers' rights with public employees' right to free speech. Hiers brought five First Amendment claims as if they were distinct causes of action warranting separate analyses. Are Hiers' First Amendment claims all subject to the *Pickering* test?

2. **First Amendment (Public Concern):** Under the *Pickering* test, a public employee's speech is only protected if it was on a matter of public concern, which focuses on the content, form and context of the statement. Hiers anonymously made a single uninformative joke about another anonymous individual's fliers in a private setting. Was Hiers' joke constitutionally-protected speech on a matter of public concern?

3. **Fourteenth Amendment (Vagueness):** Hiers claims that UNT's Misconduct Policy is unconstitutionally vague. But Hiers alleges no facts suggesting that he was not renewed due to this policy or that his speech was otherwise chilled as a result of this policy. And the policy defines "misconduct" in accordance with Supreme Court precedent. Does Hiers have standing to bring this vagueness challenge and has he plausibly alleged such a claim?

4. **Fourteenth Amendment (Procedural Due Process):** A person must have a legitimate entitlement to the benefit in question to sustain a procedural due process claim. Hiers was a non-tenured adjunct professor who was only hired to teach for the Fall 2019 semester. UNT revoked the offer to have Hiers teach for the Spring 2020 semester before he signed it. Can Hiers sustain a procedural due process claim under the circumstances?

5. **Fourteenth Amendment (Equal Protection):** Hiers asserts an equal protection "class-of-one" claim. But Supreme Court precedent holds that the class-of-one theory of equal protection has no application in the public employment context. Is Hiers' equal protection claim barred by Supreme Court precedent?

6. **Personal Involvement:** A defendant's personal involvement in the alleged unconstitutional acts is an essential element of a claim under 42 U.S.C. § 1983. Hiers sued 15 high ranking UNT officials. But he alleges no facts suggesting that 13 of the 15 Defendants were involved in the incident in question. Has Hiers plausibly alleged a § 1983 claim against these 13 Defendants?

3

7. **Breach of Contract:** Hiers sued Defendants in their individual capacities on a theory that UNT breached a contract to have him teach for the Spring 2020 semester. But UNT revoked that offer before Hiers signed it. And any contract was with UNT and not the Defendants in their individual capacities. Can Hiers sustain a breach of contract claim under the circumstances?

8. **Sovereign Immunity:** Hiers sued Defendants in their official capacities for damages under § 1983. He also brought a claim for breach of contract. But UNT has not waived sovereign immunity for such claims and thus neither have its officers. Are Hiers' official-capacity § 1983 claims for damages and is his breach of contract claim barred by sovereign immunity?

9. **Qualified Immunity:** To overcome qualified immunity, Hiers must show that his right to make an anonymous, uninformative, and private joke about another anonymous individual's fliers was clearly established such that every reasonable official would have understood this to be constitutionally-protected speech. Yet the weight of authority suggests otherwise. And Fifth Circuit precedents hold that the results of a *Pickering* test will rarely be clearly established. Can Hiers overcome Defendants' qualified immunity defense under the circumstances?

<u>**BACKGROUND**</u>

I. **Hiers Anonymously and Privately Teases Another Anonymous Person's Fliers About Microaggressions in the Workplace.**

Hiers obtained his Ph.D. in Mathematics from UNT in May 2019.[3] Around two months later, Hiers accepted an offer to work for UNT as an adjunct faculty member and taught four UNT math classes for the Fall 2019 semester, making $3,600 per class.[4] An adjunct "is a non-tenured faculty member employed for instructional purposes only and for a fixed term, usually on a semester-by-semester basis."[5]

---

[3] Compl., ¶ 79.
[4] *Id.* at ¶¶ 80–82, 196.
[5] *Policies of the University of North Texas: 6.002 Academic Appointments and Titles, available at* https://policy.unt.edu/sites/default/files/06.002.AcadAppts.Published5.19.pdf (last visited July 14, 2020). The Academic Titles themselves can be accessed by clicking on the hyperlink labeled "UNT Academic Titles" in this document and are publicly available at https://vpaa.unt.edu/sites/default/files/documents/page/2019/academic_titles.pdf (last visited July 14, 2020).

On November 25, 2019, Hiers went to the math department's faculty lounge after teaching his evening class.[6] He saw that an anonymous person had left a stack of fliers in the lounge that discussed the harmfulness of microaggressions.[7] The fliers pertained to a National Science Foundation funded program for the University of New Hampshire.[8] The fliers seek to "improve the climate for UNH faculty" by teaching them about microaggressions, particularly in the context of university hiring situations.[9] The fliers define microaggressions as the "everyday verbal, nonverbal, and environmental slights, snubs, or insults, whether intentional or unintentional, that communicate hostile, derogatory, or negative messages to target persons based solely upon their marginalized group membership."[10]

Hiers "looked at the fliers, disagreed with what was said, and wrote on the faculty lounge chalkboard, 'Don't leave garbage lying around,' with an arrow pointing to one of the fliers."[11] Hiers did not sign his name to this message, nor does he allege that anyone else was present when he wrote it.[12] Hiers admits he was only "jokingly teas[ing]" the anonymous "professor who left the fliers."[13] Hiers claims he had deeper thoughts about microaggressions besides merely thinking the concept was

---

[6] Compl., ¶ 4, 90–91, 101–03.

[7] *Id.*

[8] *See* ECF 1-9, 1. A clearer copy of the flier's first two pages is publicly available at the following website:
https://www.unh.edu/sites/default/files/departments/office_of_the_provost/Academic_Admin/gendermicroaggressions.pdf (last visited July 17, 2020).

[9] *Id.*

[10] *Id.* (citation omitted).

[11] Compl., ¶ 5; ECF 1-10.

[12] Compl., ¶¶ 5, 112–14; ECF 1-10.

[13] Compl., ¶ 125; *see also id.* at ¶¶ 5, 112, 158.

"garbage."[14] But he does not allege that he conveyed his substantive ideas about microaggressions to anyone at UNT.[15]

The following day, Dr. Schmidt "emailed the entire mathematics department with a picture of Dr. Hiers' chalkboard inscription and stated, 'Would the person who did this please stop being a coward and see me in the chair's office immediately.'"[16] Hiers told Dr. Schmidt that he was the message's author, and the two met later that day to discuss the matter.[17]

During this meeting, Dr. Schmidt told Hiers that the anonymous remark "was 'stupid' and was 'the nuclear option.'"[18] Hiers claims he was asked to apologize for this incident and that Dr. Schmidt offered him the option to participate in additional diversity training.[19] Hiers refused.[20] A few days later, Dr. William Cherry, the Associate Department Chair of UNT's Department of Mathematics, emailed Hiers to let him know that his "employment with us will not continue in the spring term."[21]

In a follow-up email, Dr. Schmidt explained that this decision was due to Hiers' "actions in the grad lounge on 11/26, and [his] subsequent response."[22] Specifically, Dr. Schmidt was concerned: (1) about Hiers' general dismissal of microaggression issues; (2) that the nature and content of Hiers' chalkboard message could be

---

[14] *See id.* at ¶¶ 104–12.
[15] *See id.* at ¶¶ 90–184.
[16] *Id.* at ¶ 123.
[17] *Id.* at ¶¶ 126–27.
[18] *Id.* at ¶ 128.
[19] *Id.* at ¶¶ 129–32.
[20] *See id.* at ¶¶ 129–34.
[21] *Id.* at ¶¶ 43, 141; ECF 1-13, 2.
[22] ECF 1-13, 1.

"perceived as threatening" to the faculty member or graduate student who left the

fliers; and (3) about Hiers' refusal to participate in additional diversity training.[23]

## II.   There was No Binding Contract to have Hiers Teach During the Spring 2020 Semester.

The following is a timeline of Hiers' and UNT's contract discussions, which was

put together using Hiers' allegations and attached documents.

- *July 18, 2019:* UNT sends Hiers a written letter offering him an appointment to teach three math classes in the Fall 2019 semester as an adjunct faculty member.[24] The offer letter is seven pages long and contains terms such as: (1) Hiers' proposed salary;[25] (2) the specific date his teaching duties would start;[26] (3) the policies and procedures governing his employment;[27] (4) mandatory orientations and faculty meetings;[28] and (5) other payroll-related information, like the pay period, insurance, and benefits.[29] The letter states that Hiers' appointment for the Fall 2019 semester "does not guarantee an appointment in future semesters."[30] The letter continues: "No previous written or oral commitment will be binding on the University except as specified in this letter and attached Adjunct Offer Letter Addendum."[31]

- *July 21–29, 2019:* On July 21, 2019, Dr. Cherry asks Hiers to teach a fourth math class for the Fall semester.[32] Hiers accepts.[33] Dr. Cherry informs Hiers that his original offer letter—which had Hiers teaching only three classes—would need to be amended to reflect the addition of the fourth class.[34] On July 29, 2019, Hiers signs the offer letter.[35]

---

[23] *Id.*
[24] ECF 1-5.
[25] *Id.* at 1.
[26] *Id.*
[27] *Id.* at 5.
[28] *Id.*
[29] *Id.* at 6.
[30] *Id.* at 1.
[31] *Id.* at 2.
[32] ECF 1-6.
[33] *Id.*
[34] *Id.*
[35] ECF 1-5, 3.

- *November 18, 2019:* Dr. Cherry, via email, asks Hiers to teach "Math 2700 . . . in the spring."[36] Hiers responds that same day, stating "I'll happily teach linear again."[37] No other terms were discussed.[38]

- *November 26, 2019:* Dr. Cherry sends an email to all "Math-Adjuncts" asking for "someone" to teach "Math 1780 . . . for the spring."[39] Hiers responds that same day with "I'll happily teach a third class."[40] No other terms were discussed.[41] Around the same time, UNT's office manager sends an email to "Math-Adjuncts" stating: "Your spring offer letters are ready for your signature. Please stop by my office as soon as you can to sign the offer letter."[42]

- *December 2, 2019:* Hiers went to the "mathematics department office to sign the offer letter."[43] Around the same time, UNT informed Hiers of its decision not to reappoint him for the Spring semester, and thus he never signed the offer letter for that semester.[44]

Hiers alleges that his November 2019 email exchanges with Dr. Cherry created a binding contract to have him teach three math courses during the Spring 2020 semester.[45] But these emails contained practically no essential terms and were markedly different than the offer letter Hiers signed to teach for the Fall 2019 semester. The parties clearly contemplated having Hiers sign a detailed offer letter to teach for the Spring 2020 semester, but this offer was revoked prior to Hiers signing it. Indeed, Hiers admits that he went to the mathematics department on December 2, 2019 "to sign the offer letter,"[46] an action that would be irrelevant if the

---

[36] ECF 1-7.
[37] *Id.*
[38] *Id.*
[39] ECF 1-8.
[40] *Id.*
[41] *Id.*
[42] ECF 1-11.
[43] Compl., ¶ 138.
[44] *Id.* at ¶¶ 138–41.
[45] *Id.* at ¶¶ 43, 84–88, 122.
[46] *Id.* at ¶ 138.

November 2019 email exchanges created a binding agreement. Hiers did not have a binding contract to teach during the Spring 2020 Semester.

## III.   Overview of the Complaint.

Hiers' nine asserted claims break down as follows: five First Amendment claims (retaliation, content and viewpoint discrimination, compelled speech, overbreadth, and unconstitutional conditions); three Fourteenth Amendment claims (due process of law, procedural due process, and equal protection); and one state law breach of contract claim.[47]

Hiers sued numerous high-ranking UNT System and UNT officers in both their official and individual capacities, including UNT's Board of Regents, Chancellor, President, Provost and Vice President for Academic Affairs, and Dean of the College of Sciences.[48] Hiers never explains how any of the following Defendants were personally involved in the incident in question: Laura Wright, Milton Lee, Melisa Denis, Mary Denny, Daniel Feehan, A.K. Mago, Carlos Munguia, Brint Ryan, John Scott Jr., Lesa Roe, Neal Smatresk, Jennifer Evans-Cowley, and Su Gao.

### LEGAL STANDARD

A motion to dismiss under FED. R. CIV. P. 12(b)(6) hinges on whether the plaintiff pled a "plausible" (as opposed to just a "possible") claim for relief—*i.e.* whether the plaintiff pled "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[49] If "a

---

[47] *Id.* at ¶¶ 206–83.
[48] *Id.* at ¶¶ 16, 23, 26, 31, 34, 48.
[49] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'"[50] On such a motion, the court can rely on: (1) the complaint; (2) the complaint's attachments; (3) a defendant's attachments that were referenced in the complaint and central to the plaintiff's claim; and (4) matters on which a court may take judicial notice.[51]

Justiciability issues such as standing and sovereign immunity go to the court's jurisdiction over the dispute and thus are subject to a FED. R. CIV. P. 12(b)(1) motion to dismiss.[52] In addition to relying on the items addressed above, on a Rule 12(b)(1) motion to dismiss the court can also weigh the evidence and resolve disputed facts to ensure that it has power over the case.[53]

<u>**ARGUMENT**</u>

## I.    **Hiers' First Amendment Claims Should be Dismissed.**

Hiers' First Amendment claims are all governed by the *Pickering* test. Under this test, speech is only constitutionally protected if it was on a matter of public concern. Hiers' First Amendment claims all fail because his private, anonymous, and uninformative joke was not speech on a matter of public concern.

---

[50] *Id.* (quotations omitted) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)).

[51] *See, e.g.*, *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008); *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir. 2000).

[52] *See, e.g.*, *Block v. Texas Bd. of Law Examiners*, 952 F.3d 613, 616–17 (5th Cir. 2020); *Moore v. Bryant*, 853 F.3d 245, 248–49 (5th Cir. 2017).

[53] *Barrera-Montenegro v. U.S. & Drug Enf't Admin.*, 74 F.3d 657, 659 (5th Cir. 1996); *MDPhysicians & Assoc., Inc. v. State Bd. of Ins.*, 957 F.2d 178, 181 (5th Cir. 1992).

A. **Hiers' First Amendment Claims are All Governed by the *Pickering* Test.**

Hiers' First Amendment claims all fall under the standard established by the *Pickering*, *Connick*, and *Garcetti* line of Supreme Court cases (aka the "*Pickering* test").

In *Pickering v. Bd. of Ed. Of Twp. High Sch. Dist. 205, Will Cty., Illinois*, the Supreme Court explained the competing interests at stake when First Amendment issues are analyzed in the public employment context. On one hand, public employees may not "be compelled to relinquish the First Amendment rights they would otherwise enjoy as citizens to comment on matters of public interest."[54] On the other hand, a public employer has an interest in "in regulating the speech of its employees that differ significantly from those it possesses in connection with regulation of the speech of the citizenry in general."[55] The Court found that the public employee's interest in speaking as a citizen upon matters of public concern must be balanced against the public employer's interest in promoting efficiency.[56]

In *Connick v. Myers*, the Supreme Court elaborated that, under *Pickering*, the "public concern" element is a threshold issue in a public employee's First Amendment claim:

> when a public employee speaks not as a citizen upon matters of public concern, but instead as an employee upon matters only of personal interest, absent the most unusual circumstances, a federal court is not the appropriate forum in which to review the wisdom of a personnel

---

[54] 391 U.S. 563, 568 (1968).
[55] *Id.*
[56] *Id.*

11

decision taken by a public agency allegedly in reaction to the employee's behavior.[57]

Per *Connick*, the public concern analysis focuses on the "content, form, and context" of the statement at issue.[58] The Court explained that "government officials should enjoy wide latitude in managing their offices, without intrusive oversight by the judiciary in the name of the First Amendment" and that not every matter that "transpire[s] within a government office" should be allowed to "plant the seed of a constitutional case."[59] The public concern factor protects the government's autonomy as an employer while also serving the First Amendment's core purpose of "'assur[ing] unfettered interchange of ideas for the bringing about of political and social changes desired by the people.'"[60]

In *Garcetti v. Ceballos*, the Supreme Court clarified that the issue of whether the public employee spoke as a citizen is also critical.[61] In short, when "a public employee speaks pursuant to employment responsibilities," that employee is generally not entitled to "First Amendment protection."[62] The Court mirrored *Connick's* concerns about judicial intrusions into a government employer's affairs:

> When an employee speaks as a citizen addressing a matter of public concern, the First Amendment requires a delicate balancing of the competing interests surrounding the speech and its consequences. When, however, the employee is simply performing his or her job duties, there is no warrant for a similar degree of scrutiny. To hold otherwise would be to demand permanent judicial intervention in the conduct of

---

[57] 461 U.S. 138, 147 (1983).
[58] *Id.* at 147–48.
[59] *Id.* at 146, 149.
[60] *Id.* at 145 (quoting *Roth v. United States*, 354 U.S. 476, 484 (1957)).
[61] 547 U.S. 410, 423–24 (2006).
[62] *Id.*

12

governmental operations to a degree inconsistent with sound principles of federalism and the separation of powers.[63]

Following *Pickering*, *Connick*, and *Garcetti*, to sustain a First Amendment free speech claim in the public employment context, the plaintiff must at least be able to show that: (1) he spoke as a citizen (as opposed to pursuant to his official job duties); (2) he spoke on a matter of public concern; and (3) his interest in speaking outweighed the government's interest in the efficient provision of public services.[64] "The inquiry into the protected status of speech is one of law, not fact."[65]

The *Pickering* test is usually seen in public employees' First Amendment retaliation claims, but its application is far broader and reaches practically every First Amendment free speech claim in the public employment context. This is because the *Pickering* test's underlying concerns—the federalism and separation of powers principles threatened by judicial intervention into a public employer's operations— are not limited to First Amendment retaliation situations.[66]

What this means is that although Hiers lists five separate First Amendment claims, these claims are all governed by the *Pickering* test. There should be no meaningful dispute about this.[67]

---

[63] *Id.* at 423.

[64] *See, e.g.*, *Hardesty v. Cochran*, 621 F. App'x 771, 775 (5th Cir. 2015); *Muslow v. Bd. of Supervisors of Louisiana State Univ. & Agric. & Mech. Coll.*, No. CV 19-11793, 2020 WL 1864876, at *20–21 (E.D. La. Apr. 14, 2020); *Harris v. Noxubee Cty., Mississippi*, 350 F. Supp. 3d 592, 598 (S.D. Miss. 2018), *aff'd*, 776 F. App'x 868 (5th Cir. 2019); *United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union v. Anderson*, No. SA-17-CV-1242-XR, 2018 WL 3017366, at *10 (W.D. Tex. June 15, 2018); *Broussard v. Jefferson Cty.*, No. 1:15-CV-00309, 2016 WL 11190107, at *3 (E.D. Tex. Apr. 20, 2016), *report and recommendation adopted*, No. 1:15-CV-309, 2016 WL 3063826 (E.D. Tex. May 31, 2016).

[65] *Connick*, 461 U.S. at 148 n.7.

[66] *See id.* at 146, 149; *Garcetti*, 547 U.S. at 423.

[67] *See, e.g.*, *United States v. Nat'l Treasury Employees Union*, 513 U.S. 454, 480 (1995) ("The time-tested *Pickering* balance . . . provides the governing framework for analysis of all manner of restrictions

13

As explained below, Hiers' speech was not constitutionally protected as he cannot fairly be considered to have spoken on a matter of public concern. His First Amendment claims all fail for this reason.[68]

### B. Hiers' First Amendment Claims Fail Because a Public Employee's Anonymous, Uninformative, and Private Teasing of Another Anonymous Individual is Not Speech on a Matter of Public Concern.

Hiers is asking this Court to find that a school official's anonymous, uninformative, and private joke that had no academic justification is speech on a

on speech by the government as employer.") (O'Connor, J. concurring in part and dissenting in part); *Connick*, 461 U.S. at 146 (noting that, if a plaintiff's speech was not "on a matter of public concern, it is unnecessary for us to scrutinize the reasons for her discharge," which is a statement fundamentally at odds with a viewpoint or content discrimination analysis); *Kinney v. Weaver*, 367 F.3d 337, 358–59 (5th Cir. 2004) (applying *Pickering* to the "governmental employee" version of the unconstitutional conditions doctrine); *Vojvodich v. Lopez*, 48 F.3d 879, 884 (5th Cir. 1995) ("To assert the protections of the First Amendment, the employee must establish, as a threshold matter, that his speech or activity related to a matter of public concern."); *Kluge v. Brownsburg Cmty. Sch. Corp.*, 432 F. Supp. 3d 823, 839 (S.D. Ind. 2020) (dismissing a plaintiff's First Amendment retaliation, content and viewpoint discrimination, and compelled speech claims "[b]ecause the speech at issue was pursuant to [the plaintiff's] official duties as a public employee and did not involve a matter of public concern"); *United States v. Streett*, 434 F. Supp. 3d 1125, 1170 n.20 (D.N.M. 2020) ("Government employees do not receive the same level of First Amendment protection from adverse employment actions, *e.g.*, firings, that citizens do from adverse government action, *e.g.*, penal or civil sanctions, discrimination on the basis of speech (content-based speech regulation), compelled speech, or the conditioning of a benefit."); *Gwinnett v. Sw. Fla. Reg'l Planning Council*, 407 F. Supp. 3d 1273, 1279, 1281 (M.D. Fla. 2019) (explaining that the public concern element "has been the touchstone of public employee speech cases for decades" and applying the *Pickering* framework to a compelled speech claim—noting that to do otherwise would "ignore[] fifty years of Supreme Court precedent and turn[] countless disputes between public employees and employers into constitutional matters"); *Hawkins v. D.C.*, 923 F. Supp. 2d 128, 135 (D.D.C. 2013) ("For the Constitution to kick in, . . . a public employee must be restricted from speaking as a citizen . . . .") (quotations omitted); *Fairchild v. Liberty Indep. Sch. Dist.*, No. 1:06-CV-92-TH, 2008 WL 11446526, at *14 (E.D. Tex. Feb. 11, 2008) ("This *Pickering* test is used most often in free speech retaliation cases. But, it is relevant to all cases that involve a public employee's speech.").
[68] Hiers does not appear to claim that he made any constitutionally-protected statements to Dr. Schmidt during their meeting to discuss his chalkboard message. Nor could he. His speech at that point would be akin to speech on a personal employer/employee dispute and an internal grievance of the type routinely rejected by courts. *See, e.g.*, *Moreau v. St. Landry Par. Fire Dist. No. 3*, 808 F. App'x 225, 228–29 (5th Cir. 2020); *Teague v. City of Flower Mound, Tex.*, 179 F.3d 377, 383 (5th Cir. 1999). And Hiers would be speaking as an employee, and not as a citizen, during this meeting, which would leave his speech unprotected under *Garcetti*.

14

matter of public concern. This would be an unprecedented holding, one that is effectively foreclosed by numerous binding and persuasive decisions.

For instance, in *Finch v. Fort Bend Indep. Sch. Dist.* and *Dorsett v. Bd. of Trustees for State Colleges & Universities*, the Fifth Circuit rejected school officials' First Amendment retaliation claims largely because the officials only spoke internally within their schools and because their speech did not arise against the backdrop of any widespread debate in the community.[69] Here, Hiers made his statement solely at UNT's faculty lounge[70] and he never plausibly alleges that there was widespread community debate on the issue of microaggressions in the UNT workplace.

In *Graziosi v. City of Greenville Miss.*, the Fifth Circuit found the content factor weighed against the plaintiff even though some of her contested speech—consisting of posts on the city mayor's public Facebook page—"address[ed] subjects that can be fairly considered as relating to any matter of political, social, or other concern to the community."[71] The Court reasoned that the posts did not address matters of traditional public concern, such as "malfeasance, corruption or breach of the public trust."[72] And the Court noted that the plaintiff's originally informative posts had quickly devolved into an uninformative rant that "'convey[ed] no information at all

---

[69] *Finch v. Fort Bend Indep. Sch. Dist.*, 333 F.3d 555, 564 (5th Cir. 2003); *Dorsett v. Bd. of Trustees for State Colleges & Universities*, 940 F.2d 121, 124–25 (5th Cir. 1991); *see also Alexander v. Eeds*, 392 F.3d 138, 143 (5th Cir. 2004) (finding that a Texas Department of Public Safety ("DPS") officer's comments about DPS's policy prohibiting identity-concealing masks was not protected speech in part because there was "[n]o ongoing public debate . . . on this issue, and no one outside DPS was contacted regarding the matter").

[70] *See* Compl., ¶¶ 112, 155, 208.

[71] 775 F.3d 731, 738 (5th Cir. 2015).

[72] *Id.*

other than the fact that a single employee was upset with the status quo.'"[73] Here, Heirs' anonymous comment—"Please don't leave garbage lying around"[74]—did not address a matter of traditional public concern and conveyed no meaningful information other than that Hiers was upset about fliers addressing a workplace-related issue being placed in UNT's faculty lounge.

In *Martin v. Parish*, the Fifth Circuit found that public universities can regulate uncivil and immature conduct without running afoul of the First Amendment: "[T]he first amendment does not prevent schools from determining that the essential terms of civil, mature conduct cannot be conveyed in a school that tolerates lewd, indecent or offensive speech and conduct."[75] In *Martin*, the Court held that a teacher's offensive comments that served no academic purpose did not address a matter of public concern and thus were not protected by the First Amendment.[76]

The Fifth Circuit recently reaffirmed this principle in *Buchanan v. Alexander*. In *Buchanan*, the Court held that a university professor's profane statements, poorly worded jokes, and sexually explicit comments in front of her students that served no academic purpose were not speech on a matter of public concern.[77]

While *Martin* and *Buchanan* were decided in the context of a teacher's speech in the classroom setting, the Court's decision in *Martin* implied that its holding applies more broadly:

---

[73] *Id.* (brackets in original) (quoting *Connick*, 461 U.S. at 148).
[74] Compl., ¶¶ 112, 155, 208.
[75] 805 F.2d 583, 585 (5th Cir. 1986) (quotations omitted).
[76] *Id.* at 584–85.
[77] 919 F.3d 847, 851, 853 (5th Cir. 2019).

16

> Were Martin an assistant district attorney who repeatedly used profanity in the courtroom, we have no doubt that he could be terminated for unprofessional behavior. Were he a member of Congress, such language could result in censure. . . . [W]e conclude his status as a college teacher is no less sensitive to the use of such language than that of a courtroom lawyer or member of Congress.[78]

*Martin* and *Buchanan* reflect a broader principle that courts are ill-equipped to interfere in the day-to-day operations of schools and should only do so "where there is a clear case of constitutional infringement."[79] Per the Fifth Circuit, courts "have neither the competency nor the resources to undertake to micromanage the administration of thousands of state educational institutions," and the fields of education and faculty appointments "are probably the least suited for federal court supervision."[80]

Like *Martin* and *Buchanan*, the speech at issue here is uncivil. Hiers was admittedly teasing another person by implying that the person's ideas about microaggressions in the UNT workplace were "garbage."[81] He offered no substantive criticism on the topic such that his comments could arguably be considered to serve an academic purpose or otherwise advance the marketplace of ideas.[82] And because Hiers didn't sign his name to the message, his joke would not realistically lead to

---

[78] *Martin*, 805 F.2d at 586 (citation omitted).

[79] *Duke v. N. Texas State Univ.*, 469 F.2d 829, 838 (5th Cir. 1972) (quotations omitted).

[80] *Dorsett*, 940 F.2d at 124.

[81] Compl., ¶¶ 112, 125; ECF 1-10.

[82] *See* Compl., ¶¶ 112, 125; ECF 1-10; *see also Swank v. Smart*, 898 F.2d 1247, 1250 (7th Cir. 1990) ("The purpose of the free-speech clause and of its judge-made corollary the right of association is to protect the market in ideas, broadly understood as the public expression of ideas, narratives, concepts, imagery, opinions—scientific, political, or aesthetic—to an audience whom the speaker seeks to inform, edify, or entertain. Casual chit-chat . . . confined to a small social group is unrelated, or largely so, to that marketplace, and is not protected.") (citation omitted).

some future academic debate.[83] As shown in *Martin* and *Buchanan*, the First Amendment does not prevent a public university from firing a faculty member like Hiers for making uncivil comments that serve no academic purpose.

Numerous other courts have refused to extend First Amendment protection in similar contexts to the situation presented here.

In *Shatkin v. Univ. of Texas at Arlington*, the court noted that "[s]peech relates to a matter of public concern . . . if it contributes to an informed dialog in a democratic society or contributes informed opinions on important public issues."[84] The court rejected two school officials' First Amendment retaliation claims partly because their "statements did not contribute to a well informed public debate."[85]

In *Meriwether v. Trustees of Shawnee State Univ.*, a university professor— represented by the same attorneys representing Hiers—claimed that the university retaliated against him for his repeated use of male titles and pronouns when addressing a transgender student in his classroom who identified as female.[86] In dicta, the court found that the professor's speech was not on a matter of public concern, largely because the professor did not: (1) "advance an idea transcending political interest or opinion which impacts our social and/or political lives" and instead merely expressed his personal beliefs about gender identity; (2) "shar[e] ideas

---

[83] Compl., ¶¶ 112, 125; ECF 1-10.

[84] No. 4:06-CV-882-Y, 2009 WL 614788, at *4 (N.D. Tex. Mar. 10, 2009) (citing *San Diego v. Roe*, 543 U.S. 77, 82–83 (2004)); *Pickering*, 391 U.S. at 572).

[85] *Id.* at *5.

[86] No. 1:18-CV-753, 2019 WL 4222598, at *1–7 (S.D. Ohio Sept. 5, 2019), *report and recommendation adopted*, No. 1:18-CV-753, 2020 WL 704615 (S.D. Ohio Feb. 12, 2020).

or invit[e] discussion" on the topic; (3) speak in the context of a broader discussion on the issue; and (4) have any academic justifications for his comments.[87]

In *Thayer v. City of Holton*, the court found that a plaintiff's private and informal statements on (1) the working styles of various public officials and (2) how a claim against the city should be advanced were not matters of public concern.[88] The court explained that the "Plaintiff had indicated that he may have been joking in some of his comments" and found that "[n]onpolitical joking remarks are not given First Amendment protection."[89]

In *Brooks v. Denver Pub. Sch.*, a public-school official claimed that he was improperly terminated for telling an inappropriate joke about leprechauns at a school retreat.[90] The court, quoting *Thayer*, also found that the official did not speak on a matter of public concern as "'[n]onpolitical joking remarks are not given First Amendment protection.'"[91]

In *Shepherd v. McGee*, the court analyzed whether First Amendment protection extends to a public official's jokes about "the subjects of tax credits or the use of government resources or entitlement programs."[92] The court noted that these subjects were "arguably matters of public concern."[93] But, given the plaintiff's characterization of her remarks as "humorous and ironic" and "jokes," the court found that the plaintiff's statements were "more on the periphery of First Amendment

---

[87] *Id.* at *15 (quotations omitted).
[88] 515 F. Supp. 2d 1198, 1206–07 (D. Kan. 2007).
[89] *Id.* at 1207.
[90] No. 17-CV-01968-REB-MEH, 2017 WL 5495793, at *1–3, 9 (D. Colo. Nov. 16, 2017).
[91] *Id.* at *9 (quoting *Thayer*, 515 F. Supp. 2d at 1207).
[92] 986 F. Supp. 2d 1211, 1221–22 (D. Or. 2013)
[93] *Id.* at 1221.

protection because they were banter rather than speech intended to help the public actually evaluate the performance of a public agency."[94] This conclusion was further justified as the disputed comments "were not distributed to the public or the media but were [instead] targeting a smaller audience."[95]

In *Williams v. Alabama State Univ.*, a professor at Alabama State University complained that she was retaliated against because she "spoke out against" and "instigated debate about" a grammar textbook written by other faculty members.[96] The Eleventh Circuit found that the defendants were entitled to qualified immunity: "We have not been provided nor has our research revealed any case holding that a professor's in-house criticism of a particular text is constitutionally protected speech. Decisions addressing analogous issues suggest the law to be otherwise."[97]

In *Witham v. Baptist Health Care of Oklahoma, Inc.*, a former employee of a state-run hospital claimed she was improperly terminated for presenting a resolution at the hospital's board of trustees meeting stating "we the undersigned voice our opinion in approval of retaining the current management contract with Quorum Health Care Resources, Inc."[98] The Tenth Circuit explained that "[i]t is not enough that the subject matter be of public concern; the content of the expression must also be of public concern."[99] And "[t]o be protected speech, the expression must *sufficiently inform the issue* as to be helpful to the public in evaluating the conduct of

---

[94] *Id.*
[95] *Id.*
[96] 102 F.3d 1179, 1181 (11th Cir. 1997) (quotations omitted).
[97] *Id.* at 1183.
[98] 98 F.3d 581, 582–83 (10th Cir. 1996).
[99] *Id.* at 583.

government."[100] The court found that the plaintiff's resolution "expressed nothing more than the bare opinion that the then-current management company should be retained" and "offered no reasons or explanation at all for the opinion it expressed."[101] The court held that such "bald, unadorned and nonspecific" speech does not "involve a matter of public concern warranting First Amendment protection."[102]

Hiers appears to recognize the fatal flaw in his First Amendment claims—that his anonymous comment did nothing to advance any debate on microaggressions or otherwise communicate anything of importance on this issue to the public. The Complaint thoroughly details Hiers' alleged beliefs about microaggressions, like his ideas that the concept of microaggressions "actually hurts diversity and tolerance" and that "[t]his mode of thinking teaches people to see the worst in other people, promotes a culture of victimhood, and suppresses alternative viewpoints instead of encouraging growth and dialogue."[103] Had he wrote any of this on the faculty lounge chalkboard, this would be a different case. But he did not. And his post hoc characterizations cannot convert his generic uninformative joke into constitutionally-protected speech on a matter of public concern.[104]

As the Supreme Court explained in *Connick*, the "public concern" requirement promotes the commonsense idea "that government offices could not function if every

---

[100] *Id.* (quotations omitted).

[101] *Id.*

[102] *Id.*

[103] Compl., ¶ 106.

[104] *See Dodds v. Childers*, 933 F.2d 271, 274 (5th Cir. 1991) ("Retrospective embellishment cannot transform personal grievances into matters of public concern."); *Desrochers v. City of San Bernardino*, 572 F.3d 703, 711 (9th Cir. 2009) (explaining that the public concern inquiry focuses on "what the employees actually said" and not on their "post hoc characterizations" of their remarks).

employment decision became a constitutional matter."[105] Hiers is asking this Court to be the first in the nation to aim "the heavy artillery of the Constitution"[106] at an ordinary employment dispute over a public employee's anonymous, uninformative, and private teasing of another anonymous individual. There is no basis for this unprecedented request. Hiers' First Amendment claims should be dismissed.

## C.   Additional Reasons for Why Hiers' First Amendment Claims Should be Dismissed.

Below are additional flaws in Hiers' First Amendment compelled speech, overbreadth, and unconstitutional conditions claims.

*Compelled Speech:* A compelled speech claim may arise if a state forces an individual: (1) "through his speech, to affirm a religious, political, or ideological cause that the individual did not believe in"; or (2) "as part of his daily life to be an instrument for fostering public adherence to an ideological point of view he finds unacceptable."[107] Such a claim requires that the "complaining speaker's own message was affected by the speech it was forced to accommodate."[108] And there must be "state mandated penalties" compelling a particular message.[109]

---

[105] 461 U.S. at 143.

[106] *Brooks v. Arthur*, 685 F.3d 367, 371 (4th Cir. 2012) ("At bottom *Connick* reflects the belief that many ordinary disputes in the public workplace should be settled or resolved without calling the heavy artillery of the Constitution into play.").

[107] *United States v. Arnold*, 740 F.3d 1032, 1034 (5th Cir. 2014) (cleaned up).

[108] *Rumsfeld v. Forum for Acad. & Institutional Rights, Inc.*, 547 U.S. 47, 49 (2006).

[109] *See, e.g.*, *Wilkins v. Daniels*, 744 F.3d 409, 415 (6th Cir. 2014) ("[I]n the absence of state mandated penalties coercing an individual to choose a course of conduct, state compulsion has not been found."); *Marinello v. Bushby*, No. CIV. A.1:95CV167-D-D, 1996 WL 671410, at *13 (N.D. Miss. Nov. 1, 1996) ("First Amendment protection against compelled speech has been found only in the context of governmental compulsion to disseminate a particular political or ideological message."), *aff'd*, 163 F.3d 1356 (5th Cir. 1998); *Wilcox v. Cty. of Cibola*, No. 1:06-CV-0958 MCA/RLP, 2007 WL 9709892, at *7 (D.N.M. Dec. 17, 2007) ("The absence of any compelled message . . . distinguishes Wilcox's claim from the compelled speech jurisprudence.").

Here, there were no state mandated penalties compelling Hiers' speech or silence on a particular topic. Hiers was never threatened to stay silent on the issue of microaggressions. He was never required to publicly announce his support for the concept of microaggressions or to otherwise publicly apologize for his conduct. He doesn't allege that he ever spoke or refrained from speaking about microaggressions as a result of UNT's conduct. There is no basis for Hiers' compelled speech claim.

*Overbreadth:* Hiers lacks standing and he cannot meet the basic § 1983 requirements for his First Amendment overbreadth claim regarding UNT's Misconduct Policy. There are three reasons for this conclusion.

First, no UNT official ever mentioned that Hiers was not being rehired due his violation of the Misconduct Policy, and there is no mention of this policy in Dr. Schmidt's email explaining the reasons why UNT was not bringing him back for the Spring 2020 semester.[110] Hiers is inventing a connection between his nonrenewal and UNT's Misconduct Policy out of thin air.

Second, Hiers claims that "[t]he overbreadth of this *Misconduct Policy* chills [his] speech."[111] Yet Hiers fails to allege a single instance where he refrained from engaging in protected activity as a result of the Misconduct Policy. And there is no meaningful chance that this policy could chill his speech going forward as Hiers is no longer employed with UNT.[112]

---

[110] Compl., ¶¶ 127–68; ECF 1-13.

[111] Compl., ¶¶ 242, 244.

[112] *See, e.g., Serv. Employees Int'l Union, Local 5 v. City of Houston*, 595 F.3d 588, 598 (5th Cir. 2010) (explaining that, under the overbreadth doctrine, "the plaintiff must establish injury under a particular provision of a regulation that is validly applied to its conduct"); *Morrison v. Bd. of Educ. of Boyd Cty.*, 521 F.3d 602, 610 (6th Cir. 2008) ("In order to have standing . . . , a litigant alleging chill must still establish that a concrete harm—i.e., enforcement of a challenged statute—occurred or is

Finally, the Misconduct Policy is not overbroad or vague per the Supreme Court's decision in *Arnett v. Kennedy*.[113] In *Arnett*, the Court found a statute that authorized an employee's removal or suspension without pay "for such cause as will promote the efficiency of the service" was not unconstitutionally overbroad or vague.[114] The Court reasoned that "[i]t is not feasible or necessary for the Government to spell out in detail all that conduct which will result in retaliation" and that even "[t]he most conscientious of codes that define prohibited conduct of employees includes 'catch-all' clauses prohibiting employee 'misconduct,' 'immorality,' or 'conduct unbecoming.'"[115] The Misconduct Policy is consistent with *Arnett*. Further, the policy is viewpoint and content neutral, does not directly regulate core speech, was not designed to punish any particular speech or viewpoint, and clearly lists examples of acts considered to be "misconduct."[116] The Misconduct Policy is not unconstitutionally overbroad, and Hiers' overbreadth claim should be dismissed.[117]

*Unconstitutional Conditions:* "Under the doctrine of unconstitutional conditions, the government may not require a person to give up a constitutional right

---

imminent."); *cf. Houston Balloons & Promotions, LLC v. City of Houston*, 589 F. Supp. 2d 834, 846 (S.D. Tex. 2008) ("In order to obtain standing under the overbreadth doctrine, Plaintiffs must demonstrate an ability to satisfactorily frame the issues in the case.") (quotations omitted).

[113] 416 U.S. 134 (1974).

[114] *Id.* at 158–59 (quotations omitted).

[115] *Id.* at 161.

[116] *See* ECF 1-3.

[117] *See, e.g.*, *Garrett v. Mathews*, 474 F. Supp. 594, 599 (N.D. Ala. 1979) (finding that a faculty handbook's language that there must be "adequate cause" for dismissal was not unconstitutionally vague), *aff'd*, 625 F.2d 658 (5th Cir. 1980); *Broadrick v. Oklahoma*, 413 U.S. 601, 614 (1973) ("[O]verbreadth scrutiny has generally been somewhat less rigid in the context of statutes regulating conduct in the shadow of the First Amendment, but doing so in a neutral, noncensorial manner."); *see also Esfeller v. O'Keefe*, 391 F. App'x 337, 341 (5th Cir. 2010); *Meriwether*, 2019 WL 4222598 at *20–21.

. . . in exchange for a discretionary benefit . . . ."[118] This has not occurred here. For example, UNT never said anything to Hiers like "you can only continue working for us if you publicly support the concept of microaggressions in the workplace" or did anything else remotely suggesting that Hiers' continued employment was conditioned on him giving up his First Amendment rights.

In *Meriwether*, Hiers' counsel brought a similar unconstitutional conditions claim.[119] There, Hiers' counsel was unable to define the elements of this claim or show how it "differ[ed] in any respect from [the plaintiff's] First Amendment retaliation claim."[120] The court dismissed this claim for the same reasons it dismissed the plaintiff's First Amendment retaliation claim. The same result is warranted here.

## II.     Hiers' Fourteenth Amendment Claims Should be Dismissed.

### A.     Hiers' Vagueness Challenge to the Misconduct Policy Fails—He was Never Injured by the Misconduct Policy and the Policy Reasonably Explains what Acts are Considered "Misconduct."

Hiers claims that UNT's Misconduct Policy was "unconstitutionally vague as-applied" and thus violated his "right to due process of law under the Fourteenth Amendment."[121] This claim significantly overlaps with his First Amendment overbreadth claim.[122] Like the overbreadth claim, Hiers' vagueness challenge fails

---

[118] *In re Prewitt*, 280 F. Supp. 2d 548, 560 (N.D. Miss.), *aff'd,* 84 F. App'x 397 (5th Cir. 2003).
[119] 2019 WL 4222598, at *21.
[120] *Id.*
[121] Compl., ¶ 258.
[122] *Kolender v. Lawson*, 461 U.S. 352, 358 n.8 (1983) ("[W]e have traditionally viewed vagueness and overbreadth as logically related and similar doctrines."); *Davis v. Williams*, 617 F.2d 1100, 1104 n.6 (5th Cir. 1980) ("Despite their different bases, the [vagueness and overbreadth] doctrines overlap considerably."); *Jordan v. Pugh*, 425 F.3d 820, 827 (10th Cir. 2005) (" Overbreadth and vagueness claims generally involve the same nucleus of facts, and require similar analysis of the terms and reach of the challenged provision.").

because: (1) he was never plausibly injured by the Misconduct Policy; (2) he will never realistically be injured by the policy given he is no longer employed with UNT; and (3) the policy reasonably explains what is  considered misconduct and is consistent with the Supreme Court's decision in *Arnett*.[123]

**B.  Hiers' Procedural Due Process Claim Fails Because: (1) There was No Binding Agreement to have Him Teach for the Spring 2020 Semester; (2) He was an At Will Employee; and (3) He Received All Constitutionally-Required Process.**

Hiers alleges that UNT's decision not to reappoint him for the Spring 2020 semester violated his right to procedural due process.[124] This claim is inadequately pled and should be dismissed for the reasons mentioned below.

### 1.  General Overview.

"'If there is no protected property interest, there is no process due.'"[125] To have a protectable property interest in a benefit, the person must "have a legitimate claim of entitlement" to the benefit.[126] A person's "abstract need or desire" for a benefit or his "unilateral expectation" in it does not create a protectable property interest.[127] The determination of whether a protected property interest exists is "'guided by the specific nature and terms of the particular employment at issue, and [is] informed by the substantive parameters of the relevant state law.'"[128]

---

[123] *Supra* pgs. 23–24.

[124] Compl., ¶¶ 259–63.

[125] *Wigginton v. Jones*, No. 19-60268, 2020 WL 3567060, at *5 (5th Cir. July 1, 2020) (quoting *Spuler v. Pickar*, 958 F.2d 103, 106 (5th Cir. 1992)); *see also Sims v. City of Madisonville*, 894 F.3d 632, 641 (5th Cir. 2018).

[126] *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972).

[127] *Id.* at 577.

[128] *Heggemeier v. Caldwell Cty., Texas*, 826 F.3d 861, 870 (5th Cir. 2016) (brackets in original) (quoting *Muncy v. City of Dall.*, 335 F.3d 394, 398 (5th Cir. 2003)).

Texas law creates "a strong presumption in favor of at will employment."[129] This strong presumption may only be modified by "express rather than implied agreements."[130] "In the context of public employment, any ambiguity in the grant of a property interest in employment is resolved in favor of the state."[131] An at will employee can be terminated without violating procedural due process.[132]

### 2. There was No Binding Contract to have Hiers Teach for the Spring 2020 Semester.

Hiers' procedural due process claim fails because there was no binding contract to have him teach during the Spring 2020 semester. Hiers argues that his November 2019 email exchange with Dr. Cherry created a "written agreement" that he would teach during this semester.[133] This argument is wrong for three reasons.

First, these emails could not have created a binding contract because they contained practically no essential terms, like when Hiers' employment would start,

---

[129] *Id.* at 870–71 (emphasis in original) (quotations omitted); *Montgomery Cty. Hosp. Dist. v. Brown*, 965 S.W.2d 501, 502 (Tex. 1998).

[130] *Byars v. City of Austin*, 910 S.W.2d 520, 523 (Tex. App. 1995), *writ denied* (Aug. 30, 1995); *see also Heggemeier*, 826 F.3d at 870–71; *Montgomery Cty. Hosp. Dist.*, 965 S.W.2d at 502–04.

[131] *Byars*, 910 S.W.2d at 523 (citing *Batterton v. Tex. Gen. Land Office*, 783 F.2d 1220, 1223 (5th Cir. 1986)).

[132] *See, e.g., Heggemeier*, 826 F.3d at 872; *Wigginton*, 2020 WL 3567060, at *5 (quoting *Staheli v. Univ. of Miss.*, 854 F.2d 121, 124 (5th Cir. 1988)); *Campos v. Alamo Cmty. Coll. Dist.*, No. SA-03-CA-0124-RF, 2005 WL 2402674, at *2 (W.D. Tex. Sept. 23, 2005).

[133] Compl., ¶ 122.

how much he would be paid, or what his benefits would be.[134] Such generic exchanges do not create a binding employment contract under Texas law.[135]

Second, this argument ignores the parties' history. Hiers signed a seven-page letter for his initial Fall 2019 teaching position, which contained the essential terms for his employment for that semester and which stated that "[n]o previous written or oral commitment will be binding on the University except as specified in this letter and attached Adjunct Offer Letter Addendum."[136] And when Dr. Cherry and Hiers exchanged emails about adding a math course for Hiers to teach in the Fall that wasn't included in his original offer letter, Dr. Cherry advised that the offer letter would need to be amended to reflect this change.[137] The parties' history shows that informal email exchanges containing no essential terms do not create a binding contract, and it is unreasonable for Hiers to believe otherwise.[138]

Finally, Hiers states that he went to the mathematics department on December 2, 2019 "to sign the offer letter."[139] He effectively admits that the email exchanges from a few weeks prior did not create a binding contract. If they had, there would be no subsequent "offer" at issue.

---

[134] *See Dallas/Fort Worth Int'l Airport Bd. v. Vizant Techs., LLC*, 576 S.W.3d 362, 368–69 (Tex. 2019) ("A contract must state its essential terms with a reasonable degree of certainty and definiteness, sufficient to confirm that both parties actually intended to be contractually bound and to enable a court to understand and enforce the parties' obligation and provide an appropriate remedy when breached.") (quotations omitted).

[135] *See, e.g.*, *City of Houston v. Williams*, 353 S.W.3d 128, 138–39 (Tex. 2011) ("In the context of employment agreements, typical essential terms include, among others, 'compensation, duties or responsibilities'") (quoting *Martin v. Credit Prot. Ass'n Inc.*, 793 S.W.2d 667, 669 (Tex. 1990)).

[136] ECF 1-5, 2.

[137] ECF 1-6.

[138] *See* RESTATEMENT (SECOND) OF CONTRACTS § 24 (1981) ("An offer is the manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it.").

[139] Compl., ¶ 138.

Hiers had no contractual right, and thus no property interest, in teaching for the Spring 2020 semester. His procedural due process claim should be dismissed.

### 3.    At Most, Hiers was an At Will Employee.

At most, Hiers was at an at will employee for the Spring 2020 semester. As an at will employee, he had no constitutionally protected interest in the job.

The Fifth Circuit recently explained that "the establishment of a discretionary tenure policy demonstrates that 'teachers without tenure are *not* assured of continuing employment.'"[140] UNT established a tenure policy; adjunct faculty members like Hiers are on the non-tenured track.[141] This weighs heavily against his claim that he had a protectable interest in teaching for the Spring semester.

And there is no contract, policy, or other rule remotely suggesting that Hiers was anything more than a normal at will employee. Hiers relies on UNT Policy § 6.025—which establishes procedures for "Faculty Misconduct and Discipline"—as the basis for his alleged protectable property interest.[142] Yet this appears to be the wrong Policy. UNT Policy § 6.051 is far more applicable as it governs a faculty member's "right to present a grievance related to reappointment" and similar issues.[143] Either way, any claim that either § 6.025 or § 6.051 create some sort of binding contractual interest in further employment is belied by UNT Policy § 2.001, which states: "No

---

[140] *Wigginton*, 2020 WL 3567060, at *5 (quoting *Staheli*, 854 F.2d at 124).

[141] *Supra* pg. 4.

[142] Compl., ¶¶ 260–63; ECF 1-3.

[143] *Policies of the University of North Texas: 6.051 University Faculty Grievance*, *available at* https://policy.unt.edu/sites/default/files/06.051_FacultyGrievance.pdf (last visited July 14, 2020).

provision in any University policy shall create a contract, express or implied, with any individual or organization."[144]

Also, neither Policy expressly modified the at will nature of Hiers' employment, which is what's necessary to overcome the strong presumption in favor of at will employment under Texas law.[145] UNT Policies §§ 6.025 and 6.051 merely grant employees certain grievance rights. But "[t]he existence of a grievance procedure for employee complaints" does not "create a property interest in the employee's job."[146]

As an at will employee, Hiers did not have a property interest in teaching for the Spring 2020 semester. His procedural due process claim should be dismissed.

### 4.   Hiers Received all Constitutionally-Required Process.

Hiers' procedural due process claim fails because he had notice of the issue and a meaningful opportunity to respond prior to UNT's decision not to reappoint him.

"[A] university's failure to follow its own internal rules does not always establish to [sic] a due process violation."[147] Rather, such a claim arises "only when the procedures promised are denied in such a manner that the constitutional minimum is itself denied or an independent constitutional deprivation is effected."[148] "Procedural due process requires that an individual receive notice of a proposed

---

[144] *Policies of the University of North Texas: 2.001 Policy on Policies*, *available at* https://policy.unt.edu/sites/default/files/02.001_PolicyOnPolicies.Pub_.pdf (last visited July 14, 2020).
[145] *Heggemeier*, 826 F.3d at 871 (quotations omitted).
[146] *Byars*, 910 S.W.2d at 524 (Tex. App. 1995); *Haynes v. City of Beaumont*, 35 S.W.3d 166, 179 (Tex. App. 2000) ("The existence of a grievance procedure for employee complaints has been held not to alter the at-will nature of employment."); *see also Heggemeier*, 826 F.3d at 871 (finding that a public employer's policy that said "nothing of the authority to terminate and never purport[ed] to expressly alter the at-will status of employment" did not create a protectable property interest).
[147] *Wigginton*, 2020 WL 3567060, at *7.
[148] *Levitt v. Univ. of Texas at El Paso*, 759 F.2d 1224, 1230 (5th Cir. 1985).

action and an opportunity to present his side of the story."[149] The hearing "need not be elaborate" to satisfy due process requirements.[150]

On November 26, 2019, Dr. Schmidt sent an email requesting that the "coward" who wrote the chalkboard message come and see him.[151] Hiers and Dr. Schmidt met later that day.[152] During this meeting, Hiers was given an opportunity to: (1) explain his actions; (2) apologize for his conduct; and (3) attend additional diversity training.[153] Hiers had a full opportunity "to present his side of the story."[154] His procedural due process claim fails because he already received all process required by the Constitution.

## C.   Hiers' Equal Protection Claim is Barred by Supreme Court Precedent.

Hiers claims that UNT treated him differently than other faculty members who support microaggressions in violation of the Fourteenth Amendment's Equal Protection Clause.[155] This is known as a "class-of-one" equal protection claim.[156] But, in *Engquist v. Oregon Dept. of Agr.*, the Supreme Court held "that the class-of-one theory of equal protection has no application in the public employment context."[157]

---

[149] *Delahoussaye v. City of New Iberia*, 937 F.2d 144, 151 (5th Cir. 1991).

[150] *Galloway v. State of La.*, 817 F.2d 1154, 1158 (5th Cir. 1987).

[151] Compl., ¶ 123.

[152] *Id.* at ¶¶ 126–27.

[153] *Id.* at ¶¶ 127–34.

[154] *Delahoussaye*, 937 F.2d at 151.

[155] Compl., ¶¶ 264–72.

[156] *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (stating that a class-of-one equal protection claim lies "where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment").

[157] 553 U.S. 591, 607 (2008); *see also Integrity Collision Ctr. v. City of Fulshear*, 837 F.3d 581, 586 (5th Cir. 2016) (noting that, following *Engquist*, the class-of-one theory is unavailable in the public employment context).

Hiers' class-of-one equal protection claim should be dismissed as it is barred by Supreme Court precedent.

## III.   Hiers' Individual-Capacity Claims Fail Because He did Not Plausibly Allege "Personal Involvement" for 13 of the 15 Defendants.

"Personal involvement is an essential element of a civil rights cause of action."[158] Hiers plausibly alleges that Drs. Cherry and Schmidt were personally involved in the decision not to reappoint him for the Spring 2020 semester.[159] But he fails to plausibly allege that any of the other 13 Defendants—Defendants Wright, Lee, Denis, Denny, Feehan, Mago, Munguia, Ryan, Scott Jr., Roe, Smatresk, Evans-Cowley, and Gao—were involved in this incident.[160]

Hiers' allegations against the other Defendants are that these 13 individuals:

(1)   "were aware of the retaliatory and unconstitutional actions taken against Dr. Hiers and did not instruct University personnel, including the other Defendants, to change or reverse those actions to comply with constitutional mandates";[161]

(2)   "are responsible for the retaliatory and unconstitutional actions taken against Dr. Hiers";[162] and

(3)   "participated in the retaliatory and unconstitutional firing of Dr. Hiers challenged here."[163]

---

[158] *Thompson* v. *Steele*, 709 F.2d 381, 382 (5th Cir. 1983).

[159] *See* Compl., ¶¶ 121–84 (explaining that: (1) Dr. Schmidt was aware of his chalkboard message; (2) he met with Dr. Schmidt to discuss the issue; and (3) following that meeting, he received an email from Dr. Cherry stating that he would not be reappointed for the Spring 2020 semester); *see also id.* at ¶ 41 (wherein Hiers acknowledges that Dr. Schmidt was responsible for "oversee[ing] hiring, firing, renewal contracts, and other contracts for faculty in the mathematics department"); ECF 1-13, 1 (wherein Dr. Schmidt referred to the decision not to reappoint Hiers as "[m]y decision").

[160] *See id.*

[161] Compl., ¶ 35.

[162] *Id.* at ¶ 36.

[163] *Id.* at ¶ 37.

Such conclusory allegations are insufficient to establish an individual defendant's personal involvement for § 1983 purposes.[164] And to the extent Hiers is trying to hold these 13 uninvolved Defendants vicariously liable for the acts of subordinate UNT officials, such a claim would be barred by the Supreme Court's decision in *Monell v. Dep't of Soc. Servs. of City of New York.*[165]

Hiers' deficient personal involvement allegations also present a qualified immunity issue. Hiers will need to point to clearly established law explaining how these 13 uninvolved Defendants can be individually liable under the circumstances. Hiers cannot meet this burden. Hiers' individual-capacity claims against the 13 uninvolved Defendants should be dismissed.

## IV.  Hiers Cannot Sue Defendants in Their Individual Capacities for the Alleged Breach of Contract with UNT.

As discussed in the next section, Hiers' official-capacity breach of contract claim is barred by sovereign immunity. This leaves Hiers' individual-capacity breach of contract claim, which fails for the following four reasons.

---

[164] *See, e.g., U.S. Tech. Corp. v. Mississippi Dep't of Envtl. Quality,* No. 5:15-CV-66(DCB)(MTP), 2016 WL 4098609, at *6 (S.D. Miss. July 28, 2016) ("Liability under § 1983 may not be conferred to an individual defendant by general allegations . . . because proof of an individual defendant's personal involvement in the alleged wrong is a prerequisite to liability on a claim for damages under 42 U.S.C. § 1983."); *Surtain v. Stanley,* No. 5:15CV2, 2015 WL 10012999, at *5 (E.D. Tex. Dec. 16, 2015) ("Plaintiff's allegations do not demonstrate personal involvement by any of these Defendants nor wrongful conduct causally connected to a constitutional deprivation. Although he makes general allegations of the existence of a policy or custom, the Fifth Circuit has explained a plaintiff's description of a policy or custom and its relationship to an underlying constitutional violation cannot be conclusory but must contain specific facts."), *report and recommendation adopted,* No. 5:15CV2, 2016 WL 454937 (E.D. Tex. Feb. 5, 2016); *Cooper v. City of Woodville,* No. CIV A 906CV69, 2007 WL 781435, at *3 (E.D. Tex. Mar. 12, 2007) (explaining that, for a § 1983 claim against an individual defendant, "[p]laintiffs are required to allege specific facts, not just general allegations").

[165] 436 U.S. 658, 690–95 (1978) (finding that government officials cannot be held liable for the unconstitutional acts of their subordinate employees under a theory of *respondeat superior*).

First, as explained above, Hiers never had an enforceable contract to teach in the Spring 2020 semester.[166] No contract = no breach.

Second, Hiers admits his alleged contract was "between the University and [himself]."[167] He was not in privity of contract with the individual defendants and thus cannot sue them for breach in their individual capacities. Such was the holding in *Norris v. Housing Authority of City of Galveston*, where the court colorfully rejected a similar individual-capacity breach of contract claim: "Plaintiff, like a good Galveston fisherman, casts a large net, apparently in an effort to snare and attach liability to all parties involved in the execution of the employment contract; however, in this case, that net has several gaping holes which preclude liability."[168]

Third, Hiers' claim is contrary to traditional agency principles: "Unless otherwise agreed, a person making or purporting to make a contract with another as agent for a disclosed principal does not become a party to the contract."[169] Hiers cites Dr. Cherry's emails as the basis for his "written offers" to teach in the spring.[170] Yet Dr. Cherry was clearly asking Hiers to teach for UNT, a disclosed principal. The individual-capacity Defendants cannot be liable as agents under these circumstances.

Finally, Hiers would need to overcome official immunity to obtain damages against the individual-capacity Defendants for the alleged breach of contract.[171] Hiers' meritless claim cannot surpass this hurdle.

---

[166] *Supra* pgs. 27–29.
[167] Compl., ¶ 275.
[168] 980 F. Supp. 885, 892 (S.D. Tex. 1997).
[169] RESTATEMENT (SECOND) OF AGENCY § 320 (1958).
[170] Compl., ¶ 275.
[171] *Texas Dep't of Pub. Safety v. Bonilla*, 481 S.W.3d 640, 642 (Tex. 2015); *Ballantyne v. Champion Builders, Inc.*, 144 S.W.3d 417, 428 n.3 (Tex. 2004).

**V.     Hiers' § 1983 Official-Capacity Claims for Damages and His Breach of
       Contract Claim are Barred by Sovereign Immunity.**

Like other public universities in Texas, UNT is entitled to sovereign immunity

absent a waiver of this right.[172] UNT's officers, when sued in their official capacities,

are immune to the same extent as UNT.[173]

Hiers indiscriminately sued all Defendants in their individual and official

capacities and then sought damages against all Defendants.[174] It is well established

that, under the circumstances, sovereign immunity bars Hiers' § 1983 claims for

damages against official-capacity Defendants.[175] His breach of contract claim is also

barred by sovereign immunity, as "there is no waiver of sovereign immunity generally

applicable to breach-of-contract claims against the State."[176]

**VI.    Hiers' Individual-Capacity Claims are Barred by Qualified Immunity.**

   **A.     Legal Standard.**

Qualified immunity is analyzed using a two-part test. First, the court must

determine whether the defendant's actions violated a plaintiff's clearly-established

---

[172] *See, e.g.*, *United States ex rel. Jackson v. Univ. of N. Texas*, No. 4:13-CV-734-ALM-CAN, 2015 WL 13743553, at *6 (E.D. Tex. Dec. 4, 2015) (finding that UNT was an arm of the State of Texas and thus entitled to sovereign immunity), *report and recommendation adopted sub nom. United States v. Univ. of N. Texas*, No. 4:13-CV-734, 2016 WL 379613 (E.D. Tex. Feb. 1, 2016), *aff'd sub nom. United States ex rel. Jackson v. Univ. of N. Texas*, 673 F. App'x 384 (5th Cir. 2016); *Escobar-Molano v. Univ. of N. Texas*, No. 4:05-CV-317, 2005 WL 8161012, at *2 n.3 (E.D. Tex. Oct. 27, 2005) (citing various cases finding that Texas public universities were entitled to sovereign immunity).
[173] *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989); *Danos v. Jones*, 652 F.3d 577, 581 (5th Cir. 2011).
[174] Compl., ¶ 48; *id.* at pg. 29.
[175] *See, e.g.*, *NiGen Biotech, L.L.C. v. Paxton*, 804 F.3d 389, 393 (5th Cir. 2015); *Aguilar v. Texas Dep't of Criminal Justice*, 160 F.3d 1052, 1054 (5th Cir. 1998).
[176] *Prof'l Res. Plus v. Univ. of Texas, Austin*, No. 03-10-00524-CV, 2011 WL 749352, at *1 (Tex. App. Mar. 4, 2011) (citing *General Servs. Comm'n v. Little-Tex Insulation Co.*, 39 S.W.3d 591, 595–96 (Tex. 2001)); *see also Prairie View A&M Univ. v. Dickens*, 243 S.W.3d 732, 735 (Tex. App. 2007); *Rosario v. Texas Veterans Comm'n*, No. A-18-CV-1008-RP, 2019 WL 5595234, at *4 (W.D. Tex. Oct. 29, 2019).

rights.[177] Second, the court must determine whether the defendant's actions were objectively reasonable in light of the clearly-established law at the time of the disputed conduct.[178] Hiers has the burden of showing that qualified immunity does not bar his recovery.[179]

To defeat the clearly-established prong, the opponent "must be able to point to controlling authority—or a robust consensus of persuasive authority—that defines the contours of the right in question with a high degree of particularity."[180] Once sufficiently similar precedents are identified, the issue then becomes whether "the law so clearly and unambiguously prohibited [the] conduct that *every* reasonable official would understand that what he is doing violates the law."[181]

The qualified immunity standard "'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.'"[182] "This accommodation for reasonable error exists because officials should not err always on the side of caution because they fear being sued."[183]

### B. Defendants are Entitled to Qualified Immunity Because Not Every Reasonable Official Would have Understood that Their Actions Violated Clearly Established Law.

To survive this motion, Hiers will need to explain (A) why the above-analyzed deficiencies are not fatal to his claims and then (B) why—despite the authorities cited

---

[177] *Flores v. City of Palacios*, 381 F.3d 391, 393–94 (5th Cir. 2004) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

[178] *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010).

[179] *See Kovacic v. Villarreal*, 628 F.3d 209, 211 (5th Cir. 2010).

[180] *Morgan v. Swanson*, 659 F.3d 359, 371–72 (5th Cir. 2011) (quotations omitted).

[181] *Id.*

[182] *Hunter v. Bryant*, 502 U.S. 224, 229 (1991) (quoting *Malley v. Briggs*, 475 U.S. 335, 342 (1986)).

[183] *Id.* (quotations omitted).

above—*every* reasonable official would have understood that Defendants' conduct violated the Constitution. Hiers cannot meet this heavy burden.

The qualified immunity analysis for Hiers' First Amendment claims warrants extra attention. As noted above, these claims rest on the *Pickering* test. Under Fifth Circuit precedent, Hiers must show that the *results* of this test—how it would apply to the situation at hand—was clearly established. This is a particularly high bar.

A useful starting place for this point is the Fifth Circuit's seminal decision in *Noyola v. Texas Dept. of Human Resources*.[184] *Noyola* analyzed how *Pickering* impacts a qualified immunity analysis:

> One consequence of [a *Pickering*] case-by-case balancing is its implication for the qualified immunity of public officials whose actions are alleged to have violated an employee's first amendment rights. There will rarely be a basis for *a priori* judgment that the termination or discipline of a public employee violated "clearly established" constitutional rights.[185]

Thus, the Court found that qualified immunity is particularly appropriate in such cases as "'reasonable government officials, knowing only that they must not infringe on employee free speech rights, would not necessarily know just what conduct was prohibited.'"[186] *Noyola* reflects a broader theoretical approach to qualified immunity that applies to balancing tests outside of the First Amendment context.[187]

---

[184] 846 F.2d 1021 (5th Cir. 1988).

[185] *Id.* at 1025.

[186] *Id.* (brackets omitted) (quoting *Hodorowski v. Ray*, 844 F.2d 1210, 1217 (5th Cir. 1988)).

[187] *See, e.g.*, *Cleveland v. Liberty Cty. Sheriff's Dep't*, 626 F. App'x 540, 545 (5th Cir. 2015); *Brokaw v. Mercer Cty.*, 235 F.3d 1000, 1023 (7th Cir. 2000).

The Fifth Circuit has routinely cited *Noyola's* holding with approval.[188] As of 2004, *Noyola's* holding had been "embraced by at least seven other circuits" and reflected "the consensus view among circuit courts."[189] Two years later, the Supreme Court recognized in *Garcetti* that "[t]o be sure, conducting these [*Pickering*] inquiries sometimes has proved difficult" even for legally-trained judges.[190]

Nearly eight years after *Garcetti*, the Fifth Circuit, in *Morgan v. Swanson*, commented that "where the area of law is as abstruse and complicated as First Amendment jurisprudence, that right cannot be clearly established for the purposes of qualified immunity analysis."[191] The Fifth Circuit further explained that school officials are given particularly broad discretion because they have "difficult" and "vitally important" jobs.[192] Thus, school officials "are rarely denied immunity from liability arising out of First Amendment disputes."[193] *Morgan* highlights a principle over half a century old: absent a clear constitutional infringement, "courts should not interfere with the day-to-day operations of schools."[194]

There is no clear constitutional infringement here. As shown above, Hiers' anonymous, uninformative, and privately-made joke was not constitutionally

---

[188] *See, e.g., Benes v. Puckett*, 602 F. App'x 589, 595 (5th Cir. 2015); *James v. Mellen*, 305 F. App'x 192, 194 (5th Cir. 2008); *Gunaca v. State of Tex.*, 65 F.3d 467, 474 (5th Cir. 1995); *see also Keenan v. Tejeda*, 290 F.3d 252, 262 n.7 (5th Cir. 2002) (clarifying that *Noyola's* holding applies to any *Pickering* balance, including a determination of "what constitutes protected speech").

[189] *Kinney v. Weaver*, 367 F.3d 337, 387–88 (5th Cir. 2004) (Jones., J. concurring in part and dissenting in part).

[190] *Garcetti*, 547 U.S. at 418.

[191] 755 F.3d 757, 761 (5th Cir. 2014).

[192] *Id.* at 760.

[193] *Id.*

[194] *Duke*, 469 F.2d at 838.

protected. At a minimum, this is an extremely open question that is ripe for dismissal on qualified immunity grounds.

## CONCLUSION

Hiers is asking this Court to constitutionalize an ordinary employment dispute and, in doing so, make an unprecedented invasion into a government employer's ability to manage its workplace. The weight of authority is against this request. And there was certainly no clearly established law dictating that Hiers' six-word anonymous joke was constitutionally-protected speech on a matter of public concern. Hiers' claims are meritless. His Complaint should be dismissed.

Date: July 30, 2020.                              Respectfully submitted.


                                                  KEN PAXTON
                                                  Attorney General of Texas

                                                  JEFFERY C. MATEER
                                                  First Assistant Attorney General

                                                  RYAN L. BANGERT
                                                  Deputy First Assistant Attorney General

                                                  DARREN L. MCCARTY
                                                  Deputy Attorney General for Civil Litigation

                                                  THOMAS A. ALBRIGHT
                                                  Chief for General Litigation Division


                                                  /s/ Todd Dickerson
                                                  TODD DICKERSON
                                                  Attorney-in-Charge
                                                  Assistant Attorney General
                                                  Texas Bar No. 24118368
                                                  General Litigation Division
                                                  P.O. Box 12548, Capitol Station
                                                  Austin, Texas 78711-2548
                                                  (512) 463-2120 | FAX: (512) 320-0667
                                                  Todd.Dickerson@oag.texas.gov

                                                  **COUNSEL FOR DEFENDANTS**


                               **CERTIFICATE OF SERVICE**

        I certify that a true and correct copy of this foregoing motion has been served
on Hiers by electronic notification through ECF by the United States District Court
for the Eastern District of Texas, Sherman Division, on July 30, 2020.

                                                  /s/ Todd Dickerson
                                                  TODD DICKERSON
                                                  Assistant Attorney General


                                              40